**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-20-08080-001-PCT-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| James Ronald Romo, Jr., | |
| Defendant. | |

Pending before the Court is Defendant's *pro se* motion for early termination of supervised release. (Doc. 67.) For the following reasons, the motion is denied.

**BACKGROUND**

Between 1999 and 2016, Defendant amassed an array of convictions, including two convictions for possession of drug paraphernalia, two convictions for possession of a weapon by a prohibited person, one conviction for assault by means of force likely to produce great bodily injury, one conviction for driving under the influence of alcohol, one conviction for possessing marijuana while driving, one conviction for tampering with physical evidence, and one conviction for discharging a laser at an occupied aircraft and possessing a silencer and short-barreled shotgun. (Doc. 59 ¶¶ 28-35.) During this period and in the years that followed, Defendant was also arrested or otherwise encountered by the police in relation to several other suspected crimes. (*Id.* ¶¶ 39-47.)

In this case, the first relevant development occurred in August 2019, when the FBI received information that Defendant, despite being a convicted felon, always carried a

firearm and had previously threatened to kill law enforcement officers. (*Id.* ¶ 7.) Less than a year later, in July 2020, Defendant was a passenger in a truck that was pulled over for an infraction. (*Id.* ¶ 8.) The officer conducting the traffic stop smelled marijuana and removed Defendant and the other two occupants. (*Id.*) FBI agents then arrived at the scene and, during a search of the vehicle, found a red bag on the rear seat near where Defendant was sitting. (*Id.* ¶ 9.) The bag contained drug paraphernalia and an ammunition box containing 18 rounds of ammunition. (*Id.*) Agents also found a cooler near where Defendant was sitting, and inside the cooler was a .45 caliber Glock pistol with an obliterated serial number. (*Id.*)

Based on these developments, Defendant was charged with, and eventually pleaded guilty to, the crime of being a felon in possession of a firearm. (*Id.* ¶¶ 1-2.) On August 3, 2021, Defendant was sentenced to 24 months' imprisonment, to be followed by a 36-month term of supervised release. (Doc. 63.) According to the Bureau of Prisons' inmate locator website, and as now confirmed by the government (Doc. 71 at 2), Defendant's term of supervised release began in March 2022 and is scheduled to end in March 2025.

On August 2, 2023, Defendant filed the pending *pro se* motion for early termination of supervised release. (Doc. 67.) Defendant argues that early termination is appropriate because he has "completed all of my requirements asked of me," "even took it farther by having been employed for most of my supervision," and has "completed my mental health evaluation . . . with a[n] offer to speak in the groups in the future due to my experience in dealing with mental illness and restoration of sanity/sober living." (*Id.* at 1.) Defendant also contends that he has "passed all of my drug tests for past 16 months" and "volunteered in my community as often as possible." (*Id.*) Finally, Defendant contends that his status as a supervisee is interfering with his housing prospects and is preventing him from enrolling in school to obtain a commercial driver's license. (*Id.* at 1-2.)

The government opposes Defendant's request. (Doc. 71.) In a nutshell, the government "acknowledges [Defendant's] compliance with his supervision and commends him for his behavior since his conviction and his desire to seek active employment and a

stable living arrangement" but argues that "given the nature and circumstances of [Defendant's] underlying offense, as well as his criminal history, the government believes it would be premature for the Court to terminate his supervised release when it is only approximately halfway complete." (*Id.* at 1.)

### DISCUSSION

Defendant's request for early termination of supervised release is governed by 18 U.S.C. § 3583(e)(1), which provides that a court "may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." *See generally United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014) ("The correct legal standard for deciding a motion to terminate supervised release is set forth in 18 U.S.C. § 3583(e). The statute provides that, after considering a subset of the sentencing factors set forth in 18 U.S.C. § 3553(a), a court may terminate a term of supervised release 'if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.' The expansive phrases 'conduct of the defendant' and 'interest of justice' make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination.") (citations omitted).

Here, although Defendant's conduct has been exemplary since his supervised release term began in March 2022, that is only part of the equation. The Court also must consider certain § 3553 factors, including the "history and characteristics of the defendant" per § 3553(a)(1) and the need "to protect the public from further crimes of the defendant" per § 3553(a)(2)(C), as well as the "interest of justice." In light of Defendant's criminal history—as noted, the underlying offense was simply the latest in a lengthy string of convictions, many of which involved firearms—the Court concludes that the interest of justice and public safety would best be served by retaining the supervisory framework that has enabled Defendant to thrive and remain crime-free during his first 16 months of post-

release life.  Defendant is to be commended for his performance thus far.

Finally, to the extent there are any *modifications* to Defendant's current terms of supervised release that might address the housing and vocational difficulties discussed in Defendant's motion, Defendant is free to work with his assigned probation officer to pursue those modifications.

Accordingly, **IT IS ORDERED** that Defendant's motion for early termination of supervised release (Doc. 67) is **denied**.

Dated this 29th day of August, 2023.

_____
Dominic W. Lanza
United States District Judge